Honorable Bob Holden Governor of State of Missouri Room 216, State Capitol Building Jefferson City, MO 65101
Dear Governor Holden:
In your letter of April 2, 2001, you indicated that Representative Mark Richardson, whom you had appointed to the 2001 House and Senate Apportionment Commissions established pursuant to Article III, Sections 2 and 7 of the Missouri Constitution, has declined his appointment. You then posed seven questions:
 1. Do I now have the authority to appoint another person in Representative Richardson's place on the House Apportionment Commission?
 2. Do I now have the authority to appoint another person in Representative Richardson's place on the Senate Apportionment Commission?
 3. If I can appoint another person in place of Representative Richardson on the House Apportionment Commission am I required to make such an appointment?
 4. If I can appoint another person in place of Representative Richardson on the Senate Apportionment Commission am I required to make such an appointment?
 5. If I can appoint another person in place of Representative Richardson on the House Apportionment Commission, am I limited in choosing from the nominees given to me by the Republican 8th Congressional District Committee on February 26, 2001, or may I appoint an individual of my choosing? Must that person be a resident of the 8th Congressional District?
 6. If I can appoint another person in place of Representative Richardson on the Senate Apportionment Commission, am I limited in choosing from the nominees given to me by the Republican State Committee on February 26, 2001, or may I appoint an individual of my choosing?
 7. If I can appoint another person in place of Representative Richardson on either commission, must such appointments be made with the advice and consent of the Senate pursuant to Article 4, § 51?
Apportionment commissions are established by the Missouri Constitution, and we must look to the Constitution, first, for guidance as to their appointment and composition. In pertinent part, Article III, Section 2, which addresses House commissions, provides:
 Within sixty days after the population of this state is reported to the President for each decennial census of the United States and, in the event that a reapportionment has been invalidated by a court of competent jurisdiction, within sixty days after notification by the governor that such a ruling has been made, the congressional district committee of each of the two parties casting the highest vote for governor at the last preceding election shall meet and the members of the committee shall nominate, by a majority vote of the members of the committee present, provided that a majority of the elected members is present, two members of their party, residents in that district, as nominees for reapportionment commissioners. Neither party shall select more than one nominee from any one state legislative district. The congressional committees shall each submit to the governor their list of elected nominees. Within thirty days the governor shall appoint a commission consisting of one name from each list to reapportion the state into one hundred and sixty-three representative districts and to establish the numbers and boundaries of said districts.
 If any of the congressional committees fails to submit a list within such time the governor shall appoint a member of his own choice from that district and from the political party of the committee failing to make the appointment.
Article III, Section 7, which addresses Senate commissions, is largely parallel:
 Within sixty days after the population of this state is reported to the President for each decennial census of the United States, and within sixty days after notification by the governor that a reapportionment has been invalidated by a court of competent jurisdiction, the state committee of each of the two political parties casting the highest vote for governor at the last preceding election shall, at a committee meeting duly called, select by a vote of the individual committee members, and thereafter submit to the governor a list of ten persons, and within thirty days thereafter the governor shall appoint a commission of ten members, five from each list, to reapportion the thirty-four senatorial districts and to establish the numbers and boundaries of said districts.
 If either of the party committees fails to submit a list within such time the governor shall appoint five members of his own choice from the party of the committee so failing to act.
The initial appointments, then, result in commissions that are evenly divided between the two designated political parties. And the appointments to the House commission must include a commissioner from each party who is a resident of each congressional district. The initial appointments must also be made from the nominations of specified party committees.
We understand from your letter that in 2001, each of the party committees timely submitted to you nominations as provided by Article III, Sections 2 and 7. We also understand that you timely appointed persons to the commissions from those lists, again as provided by Article III, Sections 2 and 7. Your questions arise because of the decision of a nominee to decline his appointment to each of the commissions.
Article III, Sections 2 and 7 do not themselves address vacancies on the commissions. The process that they specify for appointment to the commissions was completed when you appointed commissioners from among the nominees. Thus, we must look elsewhere for guidance as to whether and how a vacancy on either commission can be filled.
Your first two questions ask whether you have authority to fill a vacancy in either commission. The governor's general authority to fill vacancies in public office is found in Article IV, Section 4:
 The governor shall fill all vacancies in public offices unless otherwise provided by law, and his appointees shall serve until their successors are duly elected or appointed and qualified.
Though the Constitution does not define "public offices," they apparently include those positions whose occupants are "endowed by law with the power and authority to use [their] own judgment and discretion in discharging the sovereign functions of government."State v. Pigg, 249 S.W.2d 435, 441 (Mo.banc 1952). Members of the apportionment commissions are charged with using their own judgment and discretion, and the task of setting the boundaries of districts is a sovereign function of the state. Thus, positions on the apportionment commissions are "public offices," vacancies in which are to be filled by the governor.
The governor's authority under Article IV, Section 4 can, as that section provides, be modified or limited by statute. E.g., §§ 105.030 (appointment to vacant elected offices generally),105.040 (appointment to the U.S. Senate), 105.050 (appointment of the attorney general and prosecutors), RSMo 2000. But no statute limits or modifies the governor's authority to fill vacancies on the apportionment commissions. Thus, you have authority to appoint persons to fill such vacancies pursuant to Article IV, Section 4.
You next ask whether you are required to make such appointments. The alternative would be to leave the positions vacant. This is not an instance in which necessity compels appointment. A commission could function with a single, or even with multiple vacancies, so long as there remained enough members to approve a final plan.
Nonetheless, appointment is required by the language of Article IV, Section 4. That section explicitly provides that the "governor shall fill all vacancies in public offices unless otherwise provided by law" (emphasis added). Missouri precedents recognize that constitutional provisions are usually deemed mandatory, and not merely directory. The Missouri Supreme Court has most often stated that general rule in the context of constitutional amendments, but has pronounced its application to the rest of the Constitution:
 The general rule is that the provisions of a constitution regulating its own amendment are mandatory and not directory. . . . The same general rule applies to other constitutional provisions, unless by express provision or necessary implication, a different intention is manifest.
State v. Holman, 296 S.W.2d 482, 495 (Mo.banc 1956). See alsoState v. Dearing, 263 S.W.2d 381, 385-86 (Mo.banc 1954). There is neither "express provision [n]or necessary implication" that the appointment power in Article IV, Section 4 is directory, rather than mandatory. Because commission positions are public offices, and there is no law relieving you of the obligation to fill vacancies on the commissions, you are required to fill them.[1]
Your third set of questions goes to limitations on those who could be appointed to fill the vacancies. You ask, first, whether you are limited to the nominees given to you by the party committees. The process of nomination and selection from nominees specified in Article III, Sections 2 and 7 was completed when you made your initial appointments. There is no provision in the Constitution or otherwise for returning to those nominations or soliciting new nominations when there is a vacancy. The governor's authority to appoint to fill vacancies on the commissions is consistent with his authority to appoint in the absence of a proper slate of nominees from which to choose. There he is able to "appoint a member of his own choice," and is thus not bound by any nomination process. Article III, Sections 2 and 7. You can similarly appoint persons "of [your] own choice" to fill vacancies that arise on the commissions.
You then ask whether your choice is limited so as to require that you fill a vacancy on the House commission with a resident of the same congressional district as the appointee whose position is to be filled. The governor's appointment power under Article IV, Section 4 must be construed in light of the specifications for initial appointment and commission membership in Article III, Sections 2 and 7. The "primary object" in construing any constitutional provision is its "intent." State v. Atterbury,300 S.W.2d 806, 810 (Mo.banc 1957). "The constitution must be read as a whole and seemingly conflicting provisions should be harmonized so as to give effect to the whole." Id. The intent of Article III, Section 2 was to create bipartisan commissions with statewide representation. To effectuate that intent, and to harmonize the governor's broad appointment power with specific regulation of the membership of House commissions, it is necessary to apply the residency requirement to both initial and vacancy appointments. To put it another way, each position on a House apportionment commission is specific to a particular congressional district, and to appoint someone to a vacant position who is not a resident of that district would frustrate the intent of the Constitution that the commission have equal representation from all parts of the state. Thus, to fill a vacancy, you must appoint someone who meets the requirements that applied to the original appointment.
Finally, you ask whether appointments to vacancies on the commissions must be made with the advice and consent of the Senate. You cite Article IV, Section 51 which provides, in pertinent part:
 All members of administrative boards and commissions, all department and division heads and all other officials appointed by the governor shall be made only by and with the advice and consent of the senate.
Article III, Sections 2 and 7 clearly exclude initial appointments to the commissions from among those for which Senate confirmation is required. The question, then, is whether Article IV, Section 51 changes that rule when the appointment fills a vacancy, pursuant to Article IV, Section 4.
The language of Section 51 is clear as to gubernatorial appointments of such executive branch officials as members of administrative boards and commissions and department and division heads, positions that are generally created by statute. But its application to a vacancy in an office that was created by the constitution, outside the executive branch, where the initial appointments do not require Senate approval, is not readily apparent.
Article IV, Section 51 has been interpreted by the Missouri Supreme Court only once, in Bank of Washington v. McAuliffe,676 S.W.2d 483 (Mo.banc 1984). The fact that no opinion in that case could garner the support of four judges demonstrates how difficult it is to reconcile the general appointment power in Article IV, Section 4 with the language of Section 51. Moreover, in McAuliffe the court considered only the application of Section 51 to an office that must, by statute, be filled with the advice and consent of the Senate. See id. at 490. It did not reach the even more difficult question of whether Section 51 imposes a Senate approval requirement on vacancies that fall outside "the senate's supervisory function over permanent appointments." Id. at 487.
Neither the case law nor the language of the constitution clearly answers the question you pose. That uncertainty presents a significant problem: it creates a basis for challenging an apportionment plan adopted with the vote of a person appointed to fill a vacancy without Senate approval. A successful challenge might result in a holding that the plan is void, thus casting the matter before the judicial panels contemplated by Article III, Sections 2 and 7. Regardless of the outcome, the mere process of litigating the question might delay submission of the matter to the judicial panel, frustrating the carefully planned timing of Article III, Sections 2 and 7, with the possible result that there is no plan in place before candidate filing begins in 2002. To avoid that result, we recommend that you seek the advice and consent of the Senate for any vacancy appointments to the apportionment commissions.
 CONCLUSION
Our response to your questions (1) and (2) is that the governor has authority to fill a vacancy on the apportionment commissions. Our response to your questions (3) and (4) is that you are directed by the Constitution to do so. Our response to your question (6) and to the first part of your question (5) is that you need not select a person from a list provided to you by a party committee pursuant to Article III, Sections 2 and 7. Our response to the second part of your question (5) is that when appointing a person to fill a vacancy on the House commission, you must appoint someone who resides in the district for which there is a vacancy. And our response to your question (7) is that although there is no clear requirement that you do so, you should submit appointments to fill vacancies on the commissions to the Senate for its advice and consent.
Sincerely,
 JEREMIAH W. (JAY) NIXON Attorney General
[1] There is no constitutional nor statutory instruction as to the timing of such appointments. They presumably must be made within a reasonable time.